UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES U. PAYNE,

                Plaintiff,                        Case No. 18-11154

v.                                      District Judge David M. Lawson
                                      Magistrate Judge R. Steven Whalen

JOSEPH LOWRY, OFFICER CLARK,
and KELLIE M. FITTONNEVILLE,

                Defendants.

_____ /

## REPORT AND RECOMMENDATION

On April 9, 2018, Plaintiff James U. Payne filed a pro se civil complaint under 42 U.S.C. § 1983, alleging violations of the First, Fourth, and Fourteenth Amendments. Before the Court is a Motion for Summary Judgment [Doc. #32] filed by Defendants Lowry, Clark, and Fittonneville, which has been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED.

## I.   FACTS

Mr. Payne's handwritten complaint is a bit rambling, but it can be read to make the following allegations and claims. While driving his green Lincoln Navigator, he was pulled over by the Hazel Park, Michigan police. He alleges that the stop was the result of "mistaken identity," since the dispatcher's report said that the police were looking for someone driving blue Lincoln Navigator. He states that he was not allowed to talk when he appeared in court, and claims that this was a violation of his First Amendment rights.

-1-

Mr. Payne states that he had a seizure while he was in the lockup in Hazel Park, and that the police "denied him to go to the hospital to get treated like the ambulance people said I needed to go." He claims a Fourteenth Amendment Due Process violation based on this denial of medical care. He also alleges that the police took his driver's license and his Michigan medical marijuana card, in violation of the Fourth Amendment. He alleges that s a result of not having his driver's license returned, he lost his Lincoln Navigator.  Mr. Payne alleges that Defendant Kellie Fittonneville, a probation officer, lied in court, as a result of which he served 17 days in jail:

> "Probation officer Kellie M. Fittonneville lied and told the judge I was at Time Horton's eating and she said I was trying to get my property and try to leave when I came to her office first and she was busy. She lied in court that's perjury in court so the judge sent me back to jail for about 17 days for nothing.

Finally, Mr. Payne alleges that "Officer Clark said he would come in to testify."

Exhibit C to Defendants' motion is a transcript of Mr. Payne's deposition.  He testified that he suffered from seizures, and in the past had received Social Security Disability payments.  *Payne Dep.*, 18-19.  He states that on April 11, 2016, he picked up a friend at her house in Hazel Park.  While he was parked in front of the house, the police appeared "out of the blue" and "pull[ed] him over for being parked for nothing." An officer tapped on his car window, but "out of fear" Mr. Payne drove off.  *Id*. 43-48.  He drove around a residential neighborhood and came back out on Nine Mile Road. Eventually he stopped, exited his car, and ran, with a police officer in pursuit.  *Id*., 49-51. When he came to a parking lot, he lied down. *Id*., 54.

Mr. Payne testified that the police seized 2.4 ounces of marijuana, scales, a medical marijuana caregiver's card, transaction records, and $655.30 in cash.  *Id*., 55-56. He said that although the police returned part of his money, they did not return his

marijuana caregiver's card or his driver's license. *Id.*, 56-57. He obtained a new driver's license on June 23, 2016. *Id.*, 57.

Mr. Payne testified that when he was taken into custody, he told people at the jail that he was taking medication for seizures, specifically Depakote ER and Keppra. *Id.*, 61-62. However, he said that at the time he did not have an active prescription for these medications. *Id.* 64. He said that his custodians tried to give him "pink regular Depakote, which that wasn't strong enough for me." *Id.*, 63-64. He said that he had a seizure the following day (April 12), and that paramedics told him that he needed to go to the hospital. Instead, he states, he was taken to the Oakland County jail. *Id.*, 64-70.

Mr. Payne testified that Officer Clark, a Defendant in this case, said "that it was boge for them not to take me to get no medical help when I had a seizure. I know he said he'll come in and testify." *Id.*, 70-71. Mr. Payne said that he named Clark as a defendant because "he didn't want him to lose his job," and didn't know how to put him on the "plaintiff side" of the complaint. He conceded that Officer Clark did nothing wrong:

> Q:     Okay, so again, my question is why sue him [Clark]?
>
> A.     I just told you. Again, for the second time I'm going to tell you. It's because I'm doing it pro se and at the time I didn't know that I could put him as a plaintiff as ETAL instead of just defendant. And on top of it I didn't want him to lose his job.
>
> Q:     All right. It sounds like you're saying he didn't do anything wrong?
>
> A:     He didn't do nothing.
>
> Q:     All right.
>
> A:     All he said he's just coming in to testify. *Id.*, 72.

Mr. Payne testified that he was suing Officer Lowry because Lowry refused to return his driver's license, his medical marijuana caregiver's card, his medical marijuana patient card, and his marijuana.  *Id*., 75-81.

Mr. Payne testified that he was suing Probation Officer Fittonneville because she lied in court (apparently at a probation violation hearing) by stating falsely that he had been eating at a Tim Horton's restaurant instead of reporting to her.  However, he conceded that he was late for his appointment with her.  *Id*., 79-84.

Mr. Payne said that as a result of the incident on April 11, 2016, he was charged with fleeing and eluding a police officer, but pled guilty to the misdemeanor charge of attempted resisting and obstructing an officer.  *Id*., 84-91.  He was sentenced to 18 months probation.  *Id*. 95-96.

Defendants' Exhibit B is the affidavit of Hazel Park Police Officer Matthew Viviano.  He states that on April 11, 2016, he received a report of a suspicious, dark colored Lincoln Navigator, and observed a car matching that description parked against a curb. *Viviano Affidavit*, ¶¶ 2-3.  The Plaintiff was in the driver's seat, and when Viviano motioned for him to roll down the window, the Plaintiff started to drive away.  Viviano yelled for him to stop, but Plaintiff continued to flee.  *Id*. ¶¶ 4-6.  Viviano pursued him in his patrol car until Plaintiff stopped on Nine Mile Road, exited his car, and ran on foot to the parking lot of Village Hall.  At that point, Plaintiff was taken into custody and transported to the Hazel Park Police Department.  *Id*., ¶¶ 6-10.  Viviano, who remained at the scene, conducted an inventory search of Plaintiff's Lincoln Navigator.  He discovered 2.4 ounces of marijuana, two digital scales, two boxes of plastic sandwich bags, scissors, transaction log sheets, a Michigan medical marijuana patient card, and a marijuana caregivers card.  *Id*. ¶¶ 11-12.  During booking, Plaintiff was found to have $655.30 on

-4-

his person. *Id*. ¶ 13. Viviano states that on information and belief, Plaintiff's driver's license was never discover, confiscated, destroyed, or discarded by any Police Department employee, including himself. *Id*. ¶ 14.

Viviano states that the Navigator was impounded, and a notice of seizure and intent to forfeit was served on Plaintiff. *Id*. ¶¶ 16-17. The Notice is attached to Viviano's affidavit as Exhibit 1. The police report regarding the incident is attached to the affidavit as Exhibit 2. It states that the medical marijuana cards found in the car "were confiscated and held for safekeeping." It also notes that the Oakland County Prosecutor's Office approved a warrant for the felony charge of fleeing and eluding a police officer, third degree.

Defendants' Exhibit D is the affidavit of Janeen Gielniak, a Hazel Park Police Detective. Gelniak states that a forfeiture notice was served on Plaintiff regarding his automobile on April 11, 2016. *Gielniak Affidavit*, ¶ 7. The amount of the forfeiture bond for the release of the vehicle was $500.00. *Id*. ¶ 10 and Exhibit 3 to the affidavit. It would not have been necessary for Plaintiff to produce a driver's license to have the car released, because the police had already verified that he had a valid license and that he was the registered owner of the car. *Id*. ¶ 11. In addition, Plaintiff could have authorized the release of a vehicle to a third party, but he did not do so. *Id*. ¶ 12.

Defendants' Exhibit E is the affidavit of Hazel Park Police Detective Joseph Lowry. He states that he never saw or possessed Plaintiff's driver's license. To the best of his knowledge, Plaintiff never produced his license, and no police official confiscated, destroyed, or discarded Plaintiff's license. *Lowry Affidavit*, ¶¶ 6-7. Lowry states that on June 21, 2016, Plaintiff's cell phones, medical marijuana cards, and money ($655.30), which had been held for safekeeping, were returned to him. *Id*. ¶ 10. Exhibit 4 to

Lowry's affidavit is notice of receipt of this property, signed by Plaintiff under penalty of perjury, and dated June 21, 2016.  The signed receipt states, "I certify, under penalty of perjury, that I am the lawful owner/owner's representative of the property listed above and that I have taken possession of the described property from the Hazel Park Police Department."  However, Lowry states that the Plaintiff's marijuana was not returned to him because it is a Schedule I controlled substance.  *Lowry Affidavit*, ¶ 13.

Defendant's Exhibit F is a transcript of Plaintiff's arraignment in the Hazel Park District Court, on the charge of fleeing and eluding a police officer, a five-year felony. The judge cautioned the Plaintiff that he had a right to remain silent and the right to an attorney, entered a plea of not guilty on Plaintiff's behalf, and appointed counsel. *Arraignment Transcript*, 6-7.  The judge then asked the Plaintiff if he wished to say anything before he set bond, and Plaintiff gave a lengthy statement.  *Id*., 8-10.

Defendants' Exhibit L is the transcript of Plaintiff's plea hearing in the Hazel Park District Court on April 26, 2016.  Plaintiff pled guilty to the misdemeanor charge of attempted resisting and obstructing a police officer, in exchange for a dismissal of the felony charge of fleeing and eluding, and a sentencing recommendation of probation with jail time capped at time served through the date of sentencing.[1] In addition, Plaintiff would not receive bond pending sentencing.  *Plea Transcript*, 8-9.  The judge advised the Plaintiff as follows:

> "[A]t the date of sentencing you'll be on probation with deferred jail time,
> which if you violate probation you would have to serve. But if you don't
> violate probation, you would not have to serve.  *Id*., 13

---

[1] Plaintiff pled guilty pursuant to *People v. Cobbs*, 443 Mich. 278, 505 N.W.2d 208 (1993).  Under *Cobbs*, a judge taking a plea may, at the request of a party, state the sentence that he or she deems appropriate based on available information. If the judge later decides, based on additional information, that the stated sentence is not appropriate, the defendant has an absolute right to withdraw the plea.

Plaintiff acknowledged his agreement to the plea, acknowledged his understanding of his rights, and stated that he was pleading guilty freely and voluntarily, and not as the result of threats or unstated promises.  *Id.*, 7.

Defendants' Exhibit O is the transcript of the Plaintiff's sentencing.  The Plaintiff stated his agreement to a recommended order of probation, which provided "that a 365-day jail term be imposed.  However, it goes on to recommend that you get credit for the 50 days you've already served, and that the 306-day balance be differed [sic, deferred] for strict compliance with all the terms and conditions [of probation] imposed." *Sentencing Transcript*, 4-5.  The order also provided for 18 months of non-reporting probation.  *Id.* 10. *See also* Judgment of Sentence, Defendants' Exhibit P. The judge ordered the Plaintiff to appear promptly at 9:00 a.m. the next day, to report to the Probation Department:

| | |
|---|---|
| THE COURT: | All right. You're going to be here tomorrow at 8:30, right? |
| PLAINTIFF: | Why so early so fast? |
| THE COURT: | Because you need to report to probation. |

(Plaintiff then discussed his difficulty in coming in from Jackson, since he does not have a car.  He indicates that his mother will drive him).

| | |
|---|---|
| THE COURT: | Mr. Payne? I'll say 9:00 o'clock.  Not 9:01.  You're here by nine a.m. tomorrow morning; do you understand? |
| PLAINTIFF: | Yeah. |
| THE COURT: | Now, 'cause if you're not, you're going to get violated, and there's 306 days of jail waiting for you.  So, I don't want that to happen, you don't want that to happen, right? |
| PLAINTIFF: | No, I don't want it to happen.  *Id.* 8-9. |

Defendants' Exhibit R is the transcript of a show cause hearing/arraignment held on June 3, 2016, the day after sentencing. Kellie Presbrey (now Fittonneville ) told the judge that she received a call from Plaintiff around 9:45, saying that he would be late, stating that "we were very clear he needed to be here at nine a.m., no excuses." *Show Cause Hearing Arraignment Transcript*, 3.  The judge then entered a not guilty plea on the alleged probation violation, appointed counsel, and set a show cause hearing for June 20, 2016.  As the judge was addressing the issue of bond, Ms. Fittonneville stated, "I have further information that by the court staff that he was in the Tim Hortons when she was there this morning. And that it's inexcusable.  I mean, she had to be here at eight...." *Id.*, 11.  Plaintiff denied that he was at the Tim Hortons; the judge, stating that "it comes down to a credibility concern," re-imposed a $25,000 bond. *Id.*, 12.

Defendants' Exhibit T is the transcript of the June 20th show cause hearing. Plaintiff, now represented by counsel, pled guilty to probation violation.  *Show Cause Hearing Transcript*, 3.  The judge sentenced him to 18 days time served, and ordered him to report to the Probation Department at 10:00 a.m. the next day. *Id.* 6.  Correcting her earlier statement, Probation Officer Fittonneville told the judge that on June 3rd, Plaintiff reported at about 9:45, and she told him to take a seat outside the probation office. Plaintiff then attempted to get his property from the Hazel Park Police Department, and that was where he was arrested.  *Id.*, 5.  The judge accepted Plaintiff's statement that he was *not* at the Tim Hortons, and said, "We got to the bottom of that." *Id.*, 8-9.

Defendants' Exhibit I is Patient Care Record from the Hazel Park Fire Department, documenting the paramedics' response to Plaintiff's complaint of a possible seizure on April 12, 2016.  The initial assessment, at p.1, revealed no abnormalities.  The chief complaint is noted as "possible seizure," and the box marked "signs and symptoms" notes

"No complaints or injury/illness noted."  The narrative portion, at p.2, states, "Rescue 83 dispatched emergency response to HPPD for prisoner that had possible seizure.  Upon arrival to cell block of 38YO male AOX3, Pt states he feels groggy and stiff. Pt vital signs within normal limits, Pt has no complaints, Pt is to be transported to county prison. Refusal signed as documented."  The last page of the document is a refusal of ambulance transport, signed by the Plaintiff.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate.  *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot meet that burden, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.   DISCUSSION

Plaintiff has sued three individuals: Hazel Park Police Officers Lowry and Clark, and Probation Officer Fittonneville. He brings claims under the First, Fourth, and Fourteenth Amendments.

### A.   Officer Clark

To begin, Officer Clark must be granted summary judgment because Plaintiff admits that Clark did nothing wrong, and that he only wanted him as a witness. Plaintiff testified that he named Clark as a Defendant only because he did not know how to add him as a plaintiff. As confusing as this testimony is, it appears that Plaintiff perhaps thought that to bring someone to court as a witness, it was necessary to name them as a party. In any event, there is neither an allegation nor any evidence that Clark had any personal involvement in the events of April 12, 2016, other than to express an opinion about the wisdom of sending Plaintiff to the jail rather than to the hospital. So Clark is out.

### B.   Kelli Fittonneville

Kelli Fittonneville, the Probation Officer, is entitled to summary judgment as well.

Courts have consistently held that probation officers who are performing their official

duties with regard to probationers are protected by quasi-judicial immunity:

> "... [W]hen a judge seeks to determine whether a defendant is complying
> with the terms of probation, the judge is performing a judicial function. To
> the extent court personnel were investigating whether [a defendant] was
> complying with the terms of his probation, they were performing a
> quasi-judicial function. To the extent [probation officers] were performing
> that function at the direction of the judge, they are entitled to quasi-judicial
> immunity. All of the same considerations that would apply to the judge
> apply to the probation officer. 'The prospect of damage liability under
> section 1983 would seriously erode the officer's ability to carry out his
> independent fact-finding function and thereby impair the sentencing judge's
> ability to carry out his judicial duties.' *Demoran v. Witt*, 781 F.2d 155, 157
> (9th Cir.1986) (finding absolute immunity for probation officers)."

*Loggins v. Franklin Cty., Ohio*, 218 F. App'x 466, 476 (6th Cir. 2007), quoting *Balas v.*

*Leishman-Donaldson*, 1992 WL 217735 (6th Cir. 1992).  *See also Gimson v. Wright*, 532

F.2d 552 (6th Cir. 1976)(chief probation officer protected by quasi-judicial immunity);

*Jamison v. Holly*, 2015 WL 163995, at *4 (E.D. Mich. 2015)("to the extent that Plaintiff's

claims arise from the probation officers actions in preparing pre-sentence reports or

taking other actions during court-related duties, the defendants are entitled to

quasi-judicial immunity;" *Murry v. Oakland Co. Prob.*, 2009 WL 1259722, at *3 (E.D.

Mich. 2009)(citing cases).

It appears that Defendant Fittonneville received some incorrect information about

Plaintiff frequenting a Tim Horton restaurant when he should have been at her office, and

relayed that information to the judge. No doubt Plaintiff was (and is) understandably

upset about having the credibility of his denial called into question. (Of course, even if he

was not at the Time Horton's, Plaintiff did appear 45 minutes late, contrary to the judge's

clear instructions to appear "at 9:00, not 9:01").  Nevertheless, Fittonneville is protected

by quasi-judicial immunity.

### C.    Joseph Lowry

This leaves Defendant Lowry, a detective with the Hazel Park Police Department. I will address each of Plaintiff's claims in turn.

### 1.    First Amendment

Plaintiff's First Amendment claim appears to be premised on his allegation that he was not allowed to speak in court. First, that allegation is refuted by the transcripts of the court proceedings involved in his case–his initial arraignment, his guilty plea, his sentencing, and the arraignment on his alleged probation violation–which show that although the judge tried to keep a tight rein on the proceedings, he allowed the Plaintiff to speak freely. More importantly, Defendant Lowry was not and would not have been in a position to limit Plaintiff's speech in court. All proceedings were presided over and controlled by the judge, not the officer in charge of the case. No First Amendment violation can be attributed to Lowry.

### 2.    Fourteenth Amendment / Deliberate Indifference

Plaintiff claims deliberate indifference to his serious medical needs. Specifically, he alleges that he should have been taken to a hospital and received proper treatment for his seizure disorder. At the time of the events in question, Plaintiff was a pretrial detainee. Pretrial detainees have a constitutional right to medical care. *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir.1985). Although pretrial detainees' rights are analyzed under the Fourteenth Amendment's Due Process Clause, they are completely analogous to the Eighth Amendment rights of prisoners, *Barber v. City of Salem, Ohio*, 953 F.2d 232, 235 (6th Cir.1992), in order "to avoid the anomaly of extending greater constitutional protection to a convict than to one awaiting trial." *Roberts*, 773 F.2d at 723. Hence,

-12-

pretrial detainees have a due process right to receive medical care, which can be analyzed under an Eight Amendment paradigm. *Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1096 (6th Cir.1992).

Under the Eighth Amendment, prison and jail officials may not act with deliberate indifference to the medical needs of their prisoners. *Estelle v. Gamble*, 429 U.S. 97, 103-104. A deliberate indifference claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.' " *Id*. at 15. "The objective component requires a plaintiff to prove that the alleged deprivation of medical care was serious enough to violate the Eighth Amendment." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018)(citing *Farmer*, 511 U.S. at 834). Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 702.

"[W]hen an inmate has received on-going treatment for his condition and claims that this treatment was inadequate, the objective component of an Eighth Amendment claim requires a showing of care 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Rhinehart,* 894 F.3d at 737 (quoting *Miller v. Calhoun Cty*., 408 F.3d 803, 819 (6th Cir. 2005), in turn quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ). In such case, "[t]he plaintiff also must 'place verifying medical evidence in the record to establish the detrimental effect' of the inadequate treatment." *Id*. at 738 (quoting *Napier v. Madison Cty., Ky.*, 238

F.3d 739, 742 (6th Cir. 2001) ).

In terms of the subjective prong of a deliberate indifference analysis, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th cir. 1976). *See also Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1999), citing *Estelle v. Gamble*, 97 429 U.S. at 107 ("Deliberate indifference, however, does not include negligence in diagnosing a medical condition"). To make out a claim of deliberate indifference, a plaintiff must show that his or her treatment was "so woefully inadequate as to amount to no treatment at all." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). A "difference of opinion between a plaintiff and his doctor regarding his diagnosis and treatment do[es] not state an Eighth Amendment claim." *Smith v. Sator*, 102 F. App'x 907, 909 (6th Cir. 2004) (citing *Estelle*, 429 U.S. at 107).

Plaintiff fails both the objective and the subjective prongs of the deliberate indifference analysis. In terms of the objective prong, the evidence does not show a medical condition serious enough to violate the Eighth Amendment. When he complained of a possible seizure, emergency medical personnel were promptly summoned. The medical report by the paramedics shows normal vital signs and no indication of Plaintiff's immediate distress. In fact, the report (Defendants' Exhibit I) notes "No complaints or injury/illness noted," and indicates no abnormalities on physical examination. In addition, Plaintiff signed a refusal of ambulance transport to a hospital. This does not show treatment "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Rhinehart,* 894 F.3d at 737.

-14-

In terms of the objective component, Plaintiff received a physical evaluation by medical personnel who were promptly summoned when he complained of a possible seizure. The paramedics determined that there was no immediate injury and illness. They cannot be faulted for the Plaintiff's own decision to forego an ambulance ride to the hospital. Plaintiff has not shown anything more that his disagreement with the evaluation or treatment that he received. And even it were shown that the paramedics were somehow negligent, a medical provider's "errors in medical judgment or other negligent behavior do not suffice to establish deliberate indifference." *Rhinehart*, 894 F.3d at 738 (citing *Estelle*, 429 U.S. at 107–08). Further, a medical provider "is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful." *Id*. (citing *Farmer*, 511 U.S. at 844).

Defendant Lowry is therefore entitled to summary judgment on the Fourteenth Amendment deliberate indifference claim.

### 3.   Fourth Amendment

Plaintiff's Fourth Amendment claim appears to be premised on the allegations that the police failed to return property that was taken from him at the time of his arrest, specifically his automobile, his medical marijuana cards, his driver's license, his marijuana, and his money.

The Fourth Amendment protects against unreasonable searches and seizures. However, when the driver of an automobile is arrested, an inventory search of the vehicle, and the storage of the property for safekeeping does not violate the Fourth Amendment. *See South Dakota v. Opperman*, 428 U.S. 364 (1976). In *Opperman*, the Supreme Court noted that inventory searches conducted pursuant to routine policy serve "three distinct needs: the protection of the owner's property while it remains in police custody, the

-15-

protection of the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger." *Id*. at 369; *see also United States v. Spitalieri*, 391 F. Supp. 167, 170 (N.D. Ohio 1975), aff'd, 529 F.2d 528 (6th Cir. 1976)("This Court has consistently recognized that the fourth amendment is not violated when the police take custody of the property of persons they arrest to store that property for safekeeping.").

Thus, the initial taking of Plaintiff's property when he was arrested does not constitute a Fourth Amendment violation.

Nor would the alleged failure to return the property to the Plaintiff violate the Fourth Amendment.  In *Fox v. Van Oosterum*, 176 F.3d 342 (6th Cir. 1999), the plaintiff alleged a Fourth Amendment violation where the police failed to return his driver's license to him. The license had been taken from the plaintiff earlier, pursuant to an inventory search. The Sixth Circuit held that the *retention* of property that had previously been legally seized does not constitute a subsequent seizure that would be subject to a Fourth Amendment analysis:

> "We hold that the seizure in this case, a seizure of property pursuant to an unchallenged inventory search that occurred over four months prior to the refusal to return the property, ended well before defendants Hartrum and Van Oosterum refused to return Fox's license. The refusal to return the license here neither brought about an additional seizure nor changed the character of the August 1993 seizure from a reasonable one to an unreasonable one because the seizure was already complete when the defendants refused to return the license." *Id*. at 350.

The Court added, "Put another way, the Fourth Amendment protects an individual's interest in retaining possession of property but not the interest in regaining possession of property." *Id*. at 351.[2]

---

[2] The *Fox* Court stated, "Our holding that no seizure occurred here is limited to the situation before us—an initial, lawful seizure of a piece of property followed by a refusal

*Fox* also rejected the plaintiff's procedural due process claim, citing *Parratt v. Taylor*, 451 U.S. 527 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986), and *Hudson v. Palmer*, 468 U.S. 517, 533–36 (1984). *Fox*, 176 F.3d at 348-49. In *Parratt*, the Supreme Court held that the negligent deprivation of a prisoner's property does not violate due process if adequate state remedies are available to redress the wrong. In *Hudson*, the *Parratt* doctrine was extended to cover intentional deprivations of property. The *Parratt* doctrine permits dismissal of due process claims "if (1) the deprivation was unpredictable or 'random,' (2) predeprivation process was impossible or impracticable; and (3) the state actor was not authorized to take the action that deprived the plaintiff of property." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995), citing *Zinermon v. Burch*, 494 U.S. 113, 136–39 (1990). In *Fox*, which is factually and legally on point with the present case, the Court found that all three factors were met.

Moreover, under Michigan law, adequate state remedies are available to redress the loss or failure to return Plaintiff's property. *Copeland*, 57 F.3d at 479-80, discussed some of those remedies:

> "Michigan provides several adequate post-deprivation remedies, including Michigan Court Rule 3.105 that allows an action for claim and deliver, Mich. Comp. Laws § 600.2920 that provides for a civil action to recover possession of or damages for goods and chattels unlawfully taken or detained, and Mich. Comp. Laws § 600.6401, the Michigan Court of Claims Act, which establishes a procedure to compensate for alleged unjustifiable acts of state officials."

As to his automobile, the Plaintiff was given a notice of forfeiture and was advised of the procedures available to him to contest the forfeiture. And as to the marijuana and scales, Plaintiff arguably has state law recourse under the Michigan Medical Marihuana

---

to return that property." *Id*. That is, of course, the precise situation alleged in the present case.

-17-

Act ("MMMA"), M.C.L § § 333.26424(i), which precludes the seizure or forfeiture of marijuana or related equipment that is lawfully possessed under the Act.[3]

In short, there is no constitutional basis for any of Plaintiff's claims regarding the alleged loss or failure to return his property, either under the Fourth Amendment of the Fourteenth Amendment Due Process Clause.  Defendants are therefore entitled to summary judgment.[4]

## IV.   CONCLUSION

I recommend that Defendants' Motion for Summary Judgment [Doc. #32] be GRANTED.

Any objections to this  Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985);

[3] Defendants cite a 2011 Michigan Attorney General Opinion stating that the provision of the MMMA prohibiting the forfeiture of marijuana is preempted by the federal Controlled Substances Act, 21 U.S.C. § 801, *et seq*., which classified marijuana as a Schedule I drug. While an Attorney General Opinion does not have the force of law, at least two decisions from this Court hold that the Federal Controlled Substances Act preempts the MMMA.  *See United States v. Hicks*, 722 F.Supp.2d 829 (E.D. Mich. 2010); *Forest City Residential Mgt. Inc. ex rel Plymouth Plymouth Square Ltd. Dividend Housing Ass'n v. Beasley*, 71 Fed.Supp.3d 715 (E.D. Mich. 2014).  In *United States v. Trevino*, 355 F. Supp. 3d 625, 627 (W.D. Mich. 2019), the Court noted, ""The conflict between state and federal views of medical marijuana has created new frontiers for traditional issues of constitutional law and kept many legal commentators gainfully employed."  However, because, as discussed above, Plaintiff's Fourth Amendment claims are dismissible on independent grounds, it is not necessary to address the preemption issue.

[4] In addition, as a purely factual matter, the Plaintiff signed a receipt, under penalty of perjury, stating that his cell phones, medical marijuana cards, and cash ($655.30) were returned to him on June 21, 2016.  *See* Exhibit 4 to Lowry's affidavit (Defendants' Exhibit E).  Plaintiff cannot contradict his own sworn statement, and has not presented any independent evidence that these items were not returned to him. No rational trier of fact could find otherwise.

*Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                        s/R. Steven Whalen
                                        R. STEVEN WHALEN
                                        UNITED STATES MAGISTRATE JUDGE

Date: August 15, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 17, 2015, by electronic means and/or ordinary mail.

                                        s/H. Monda in the absence of C. Ciesla
                                        Case Manager

-19-